FILED

05/19/2017

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 2, 2017

**IN RE LEWIS BONDING COMPANY**

**Appeal from the Circuit Court for Madison County**
**No. C-16-205         Donald H. Allen, Judge**

_____

**No. W2016-02171-CCA-R3-CD**

_____

The appellant, Lewis Bonding Company, appeals the denial of its "Petition to Allow Lewis Bonding Company to Use Real Property as Security Collateral," arguing the trial court abused its discretion by denying the appellant's request to pledge real property to underwrite bonds in lieu of a cash deposit with the clerk of court. The State contends the trial court's denial of the petition was a proper use of its broad discretion to regulate bondsmen. Following our review of the record and pertinent authorities, we agree with the State and affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT L. HOLLOWAY, JR., JJ., joined.

Joseph T. Howell, Jackson, Tennessee, for the appellant, Lewis Bonding Company.

Herbert H. Slatery III, Attorney General and Reporter; Zachary T. Hinkle, Assistant Attorney General; Jerry Woodall, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Facts and Procedural History*

This appeal arises as the result of the trial court's denial of the appellant's request to use unencumbered real property located at 212 East Main Street, Jackson, Tennessee, valued at $120,000.00, as collateral security for bail bonds written in the Twenty-Sixth Judicial District. In its petition, the appellant argued it has been authorized, without incident, to write bail bonds in the Twenty-Sixth Judicial District since 1960 and has

$80,000.00 deposited with the court clerk as collateral and requested permission from the trial court to substitute the real property as collateral in lieu of the cash.

The trial court held an evidentiary hearing in which Daryl Lewis, an owner of Lewis Bonding Co., testified he has been writing bonds in the Twenty-Sixth Judicial District for fifty-five years and is in good standing with the court and all licensing agencies. He understood the local rules require bail bondsmen to post collateral with the court and confirmed the appellant had $80,000.00 deposited in the court clerk's office in compliance with that requirement. According to Daryl,[1] the appellant wished to substitute the cash security with unencumbered real property located at 212 East Main Street, Jackson, Tennessee, the office building from which the bond company operated. Daryl and his brother, Mr. David Lewis, owned the property. Daryl testified he and David would use the $80,000.00 retrieved from the court clerk to pay for building renovations.

David Lewis testified next. David confirmed he and his brother wished for the trial court to take the unencumbered title to the real estate located at 212 East Main Street, Jackson, Tennessee, and place it in the clerk's office in lieu of the $80,000.00 currently held by the court clerk as a security deposit. David further confirmed they wished to use the $80,000.00 to renovate their office building and, thereby, increase its value. If the trial court would accept the unencumbered title as the Tennessee-mandated security deposit, then he would happily execute the paperwork necessary to ensure the proper security interest vests with the court clerk.

At the conclusion of their testimony, the trial court required Daryl and David Lewis to undergo random drug screenings. Following the screenings, David Presson, a probation officer with Madison County Community Corrections, testified as to the results. Mr. Presson indicated he performed a ten panel drug screen on both gentlemen, and the results were negative for both.

After receiving the results of the drug screening, the trial court denied the petition, stating, "[W]e want bondsmen who are willing to invest their money and their time and their resources in the bonding business." Other local bail bond companies posted the requisite cash collateral, so the trial court found the appellant must do the same and could only retrieve the $80,000.00 cash collateral if it ceased writing bonds altogether. In its written order denying the petition, the trial court stated:

---

[1] Because this witness has the same last name as David Lewis, who also testified at the evidentiary hearing, we refer to both witnesses by their first names. We intend no disrespect.

After reviewing the [p]etition, hearing the testimony of the [p]etitioners, both of whom passed in court drug screens and are licensed to write bail bonds in this judicial district, and there being no objection from the State of Tennessee, the Court finds that the [p]etition is not appropriate under the circumstances and should be denied.

This timely appeal followed.

*Analysis*

On appeal, the appellant asserts Tennessee law permits bond companies to pledge, as collateral, equity in real estate to the court clerk in the judicial district where the bonds will be written, so the trial court erred when denying its petition. The State contends the trial court has broad discretion to regulate bail bondsmen operating in its judicial district, and the denial of the petition was a proper use of this discretion. Upon our review of the submissions of the parties and the pertinent authorities, we agree with the State and affirm the judgment of the trial court.

The trial court has full authority to determine who should be allowed to make bonds in its courts. *Gilbreath v. Ferguson*, 260 S.W.2d 276, 278 (Tenn. 1953). It is within the inherent power of the trial court to administer its affairs, including the right to impose reasonable regulations regarding bail bonds. *In re Hitt*, 910 S.W.2d 900, 904 (Tenn. Crim. App. 1995). The trial court is given wide discretion in its regulation of bail bondsmen, and its actions will not be overturned absent a showing they were capricious, arbitrary, or illegal. *Taylor v. Waddey*, 334 S.W.2d 733, 736 (Tenn. 1960). While the legislature has adopted statutes addressing bail bondsmen, these statutory requirements "do [] not by any stretch of the imagination attempt to cover the whole field of what is necessary for a bondsman before he is allowed to make bonds in the various courts." *Id*. Therefore, the legislature's enactment of statutes addressing bail bondsmen does not interfere with the trial court's inherent power to regulate the writing of bail bonds in its own courts. *In re Hitt*, 910 S.W.2d at 904.

In jurisdictions, like the Twenty-Sixth Judicial District, where a professional bondsman uses collateral pledged with the court to underwrite bonds, Tennessee Code Annotated section 40-11-302 provides the bondsman's capacity shall be determined as follows:

(1) Where the collateral pledged is cash, or an item readily converted to cash such as a certificate of deposit, the professional bondsman's capacity shall not be less than ten (10) times the amount of collateral pledged;

- 3 -

(2) Where the collateral pledged is equity in real estate, the professional bondsman's capacity shall be not less than ten (10) times the value of the equity pledged as collateral.

Tenn. Code Ann. § 40-11-302(e).

While Tennessee Code Annotated section 40-11-302(e) contemplates the ability of professional bondsmen to pledge equity in real estate as collateral for bail bonds written, consistent with its right to regulate the bail bondsmen operating in its courts, the Twenty-Sixth Judicial District by per curiam order has implemented its own additional requirements for holding bonding privileges, including the requirements that:

2)   All bonding companies APPROVED AFTER January 1, 2015, must deposit a minimum of $75,000.00 cash with the Clerk's Office for the Clerk to hold in an interest bearing account. This applies to all bonding companies whether insurance or money backed. All insurance backed bonding companies must also supply insurance verification which consists of proof of insurance and that the company is in compliance with all insurance requirements.

   a)   All bonding companies must deposit $5,000.00 cash with the Clerk's Office for the Clerk to hold in an interest bearing account for each bonding agent that writes bonds, other than the owner, for their company.

   b)   The deposited cash shall not be withdrawn or applied to satisfy a Final Forfeiture of Judgment. Withdrawal will be permitted upon the termination of business and all bail bonds paid or exonerated.

3)   A company operating on posted security may write bail bonds up to ten (10) times the amount of the security. Security is defined as the total amount of cash on deposit with the Circuit Court Clerk. Any company utilizing insurance companies having posted the minimum cash deposit may be entitled to write bail bonds up to twenty (20) times the amount of the security posted with the Circuit Court Clerk's Office.

"[T]he promulgation of the local rules is somewhat analogous to the legislative actions and the interpretation and construction of the rules as guided by the rules concerning statutory construction." *May v. Woodlawn Memorial Park, Inc.*, No. M2001-

- 4 -

02945-COA-R3-CV, 2002 WL 31059223, at *2 (Tenn. Ct. App. Sept. 17, 2002). When interpreting a statute or rule, we look first to the plain language of the rule, giving the words their ordinary and plain meaning. *See generally Mills v. Fulmarque*, 360 S.W.3d 362, 368 (Tenn. 2012). When the meaning of a statute is clear, "[courts] apply the plain meaning without complicating the task" and enforce the statute as written. *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011). "[S]tatues 'in pari materia' – those relating to the same subject or having common purpose – are to be construed together, and the construction of one such statute, if doubtful, may be aided by considering the words and legislative intent indicated by the language of another statute." *Graham v. Caples*, 325 S.W.3d 578, 582 (Tenn. 2010) (internal quotations omitted). Courts must adopt the most "reasonable construction which avoids statutory conflict and provides for harmonious operation of the laws." *Carver v. Citizen Utils. Co.*, 954 S.W.2d 34, 35 (Tenn. 1997).

The plain language of the local rules adopted by the Twenty-Sixth Judicial District requires bail bonding companies to post cash collateral in the clerk's office and does not include a provision allowing for the posting of unencumbered real property instead. We previously determined similar local rules adopted by the Thirtieth Judicial District were properly within the province of the trial court's ability to regulate bondsmen practicing in their courts. *See In Re A-River City Bail Bond, Inc.*, No. W2015-01578-CCA-R3-CD, 2016 WL 7190909, at *7 (Tenn. Crim. App. Dec. 12, 2016) (concluding "the requirement that bonding companies in Shelby County post a minimum of $75,000 in cash or certificate of deposit with the Criminal Court Clerk applies to all bonding companies practicing before courts of record in Shelby County with criminal jurisdiction," and this regulation, which further prohibited the use of real property as collateral, was properly within the province of the trial court, thus not arbitrary or capricious). We reach the same conclusion here.

The trial court is given wide discretion in its regulation of bail bondsmen, and its actions will not be overturned absent a showing they were arbitrary, capricious, or illegal. No such showing has been made here. Tennessee law permits court clerks to accept equity in real property as collateral from bail bondsmen, but it does not require it. Here, the Twenty-Sixth Judicial District has elected to accept only cash collateral from bail bondsmen, and it was properly within its authority to do so. The appellant is not entitled to relief on this issue.

### *Conclusion*

Based upon the record, the parties' briefs, and the foregoing analysis, we affirm the judgment of the trial court.

_____
J. ROSS DYER, JUDGE