# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE

Assigned on Briefs November 14, 2013

## IN RE AMERICAN BONDING COMPANY

**Appeal from the Circuit Court for Williamson County**
**No. 0012      Michael W. Binkley, Judge**

---

**No. M2013-00735-CCA-R3-CD - Filed December 19, 2013**

---

Amir Karshenas, doing business as American Bonding Company, appeals his suspension as a bondsperson in the Twenty-First Judicial District. Because the trial court did not provide the appellant notice pursuant to Tennessee Code Annotated section 40-11-125(b) (Supp. 2011), we vacate the suspension and remand for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated and Case Remanded**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and CAMILLE R. MCMULLEN, JJ., joined.

David King (at hearing) and Geoffrey Coston (at hearing and on appeal), Franklin, Tennessee, for the appellant, American Bonding Company.

Robert E. Cooper, Jr., Attorney General & Reporter; Brent C. Cherry, Senior Counsel; Kim R. Helper, District Attorney General; and Michael Fahey and Derek K. Smith, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION
## FACTUAL AND PROCEDURAL BACKGROUND

The case at bar originates with a long-standing dispute between American Bonding Company and Grumpy's Bail Bonds. The record reflects that as far back as 2002, Leah Hulan, the President of Grumpy's Bail Bonds, filed a complaint with the Williamson County courts regarding three instances in which American Bonding Company allegedly solicited

bonds in a place where prisoners were confined, an activity designated as "unprofessional conduct" by Tennessee Code Annotated section 40-11-126(6).

On May 26, 2011, in response to "numerous complaints" of unprofessional conduct filed by Grumpy's Bail Bonds against American Bonding Company, Judge Robbie Beal sent a letter to Amir Karshenas of American Bonding Company. The letter indicated that certain allegations of violations were "supported in part by employees of the Sheriff's Department" and by the affidavit of an inmate bonded out by Grumpy's Bail Bonds. The letter listed the dates of alleged violations as September 8, 2010; September 18, 2010; October 22, 2010; November 17, 2010; November 19, 2010; November 29, 2010; January 31, 2011; and March 29, 2011.

The trial court, however, disavowed the intention of eliciting a formal response, holding a hearing, or sanctioning the company. The court instead, citing its desire to "attempt to start anew," asserted that the letter was "a mere warning that any conduct of the nature complained of will not be tolerated" and suggested that American Bonding Company review the law with its agents. It also warned, in a comment apparently aimed at Grumpy's Bail Bonds, that frivolous complaints would be dealt with harshly.

On June 23, 2011, the trial court filed a notice of hearing to determine if any violations had occurred. This hearing was prompted by a complaint regarding the solicitation of the business of Paul Cox in Williamson County Juvenile Court on May 25, 2011, the day prior to the trial court's letter. The hearing was ultimately scheduled for September 12, 2011, but on August 9, 2011, the trial court issued a second notice of hearing regarding allegations that Amir Karshenas had solicited the business of Patrick Hamilton on July 11, 2011.

At the September 12, 2011 hearing, the trial court heard evidence solely regarding the alleged solicitation of Mr. Cox. Citing some inconsistencies in testimony, the trial court found that Mr. Cox's testimony was not reliable and concluded that it could not find, by a preponderance of the evidence, that the violation had taken place.

On October 4, 2011, the trial court filed an order and notice of hearing based on Mr. Karshenas's arrest for the September 28, 2011 aggravated assault of Kevin Davis, Ms. Hulan's husband and an agent of Grumpy's Bail Bonds, with a motor vehicle. The trial court subsequently gave a separate notice on November 10, 2011, regarding allegations that on October 13, 2011, Mr. Karshenas, while speaking to Harold Reid, made threats against Mr. Davis and displayed a firearm. The trial court also intended to hold a hearing regarding a misdemeanor assault against Ms. Hulan on October 21, 2011, arising out of an incident in which he was alleged to have struck her and then threatened her in the courtroom.

At the December 19, 2011 hearing, the State elected not to proceed with the charges based on allegations by Mr. Hamilton or Mr. Reid, and Mr. Karshenas made an offer of proof regarding certain witnesses who would have contradicted the testimony of those witnesses. The trial court also concluded that the misdemeanor assault charge should not result in suspension.[1]   Because Mr. Karshenas represented to the trial court that Mr. Davis had brandished a weapon, that the aggravated assault took place as Mr. Karshenas attempted to escape, and that Mr. Karshenas intended to bring charges against Mr. Davis, the trial court did not act to suspend Mr. Karshenas based on the aggravated assault charges.   Instead, the trial court determined that it would suspend Mr. Karshenas if the grand jury did not indict Mr. Davis when it next met.  On February 17, 2012, the District Attorney General's office moved to suspend Mr. Karshenas based on his failure to file notice of his September 29, 2011[2] felony arrest within seventy-two hours, in violation of Tennessee Code Annotated section 40-11-319.

On March 1, 2012, Judge Robbie Beal suspended Mr. Karshenas's ability to act as a bonding agent, stating the court would review the suspension when the criminal proceedings had been completed.

Mr. Karshenas filed a motion to be reinstated as a bonding agent on January 11, 2013. At the February 12, 2013 hearing, the State acknowledged that the charge had been reduced to a misdeameanor for which Mr. Karshenas was on judicial diversion, and the State conceded that there was no legal basis to oppose reinstatement.  On February 13, 2013, Judge Michael Binkley ordered Mr. Karshenas's reinstatement, noting that he had pled guilty to misdemeanor assault pursuant to Tennessee Code Annotated section40-35-313 and that "no further legal basis for excluding Mr. Karshenas" existed.

The trial court, on February 21, 2013, entered an sua sponte order setting a hearing to reconsider the order reinstating Mr. Karshenas.  At a hearing held on February 25, 2013, the trial court informed the parties that, having reviewed the entire file, it intended to vacate its order reinstating Mr. Karshenas.  The trial court explained:

> Had I known what I – what I know now the morning that this motion was made I would have never, ever under any circumstances granted the motion. There is a substantial amount

---

[1]The transcript of the hearing, attached to a motion filed by Grumpy's Bail Bonds, shows that Mr. Karshenas offered to show a video from the courtroom tending to disprove these allegations.

[2]The arrest warrant is not part of the record, but the State's filing states that Mr. Karshenas was arrested on September 29, 2011.

of information in this file that I, frankly, was not told about . . .
. I don't think this gentleman should ever be writing bonds ever
again in this county or anywhere else in the 21st Judicial District.

The trial court referenced, as a cause of its decision to vacate, "this gentleman's conduct over the past, and I'm just telling you it culminated in this criminal warrant and the facts underlying the criminal warrant and the arrest and the affidavit and the information that he pled to." Mr. Karshenas's attorney asked the trial court to clarify what it meant by "underlying facts," asking, "Are you talking about all of these complaints that have been filed against him that were dismissed?" The court answered, "Part of it, yes. That's part of it. . . . Also, the accusations in the motion that was filed before Judge Beal, also the statements that are made on the record that were in – that is filed with the Court, everything in the file."[3] Mr. Karshenas's counsel then asserted that most of the complaints against Mr. Karshenas had been disproved, to which the court responded, "Some, some were." The trial court also referenced the underlying facts of the aggravated assault as a reason to vacate the order.

Counsel for Mr. Karshenas moved for a hearing to adjudicate the prior allegations of misconduct, which counsel characterized as having been previously dismissed. The trial court denied the motion for a hearing, asserting that it was not basing its ruling on any prior evidentiary hearings.

After the hearing, the trial court, in an order entitled "Order to Vacate Previous Order Reinstating Bonding Agent," vacated its reinstatement of Mr. Karshenas, finding "upon further review of the file in its entirety and the facts contained therein," that suspension was "appropriate at this time" and suspending Mr. Karshenas until further notice. During the hearing, the trial judge had twice stated his understanding that "[h]e is right back where he started from prior to the order," and "[h]e's right back where he started from, not writing bonds."

---

[3]In addition to the relevant facts described above, the record contains other items tending to discredit Mr. Karshenas, including his suspension from writing bonds in Williamson County in 2005; a 2007 order, faxed to the court by Grumpy's Bail Bonds, permanently withdrawing American Bonding Company's authority to write bonds in Davidson County due to improper solicitation under Tennessee Code Annotated section 40-11-126(6); two affidavits filed by the District Attorney General's office which tend to establish that Mr. Karshenas called the Tennessee Association of Professional Bail Agents and threatened an employee with an FBI investigation and a lawsuit for refusing to give out certain financial information regarding the certification of a Grumpy's Bail Bonds agent; a statement by Judge Beal, in a transcript of the September 12, 2011 hearing attached to a motion filed by Grumpy's Bail Bonds, that he believed Mr. Karshenas had lied to the court; and a letter from Ms. Hulan asserting that the aggravated assault came about when Mr. Karshenas was stalking her nanny and was discovered by Mr. Davis.

Mr. Karshenas appeals, arguing that the trial court did not have the statutory authority to suspend him because none of the provisions of Tennessee Code Annotated section 40-11-125(a) were met.

## ANALYSIS

We begin by noting that the order appealed from is styled, "Order to Vacate Previous Order Reinstating Bonding Agent." The trial court, both in the order and in the hearing, stated that it was merely vacating its order reinstating Mr. Karshenas, essentially restoring the prior order of suspension, which stated that Mr. Karshenas would be suspended "until the completion of his criminal case," at which time the court would review the suspension. The order vacating the reinstatement declares that "the suspension of Mr. Karshenas' ability to act as a bondsman within the 21ˢᵗ Judicial District is appropriate at this time" and further orders that Mr. Karshenas "shall be suspended as a bondsman in the 21ˢᵗ Judicial District until further notice from this Court." Because the prior order of suspension was to last only "until the completion of his criminal case," we conclude that the new order, which extended the suspension "until further notice from th[e] Court," did not merely vacate the previous reinstatement but served as a new order of suspension. Accordingly, the issue we consider is whether the trial court erred in entering an order suspending Mr. Karshenas's ability to act as a bonding agent.

A "professional bondsman," – any person, firm, partnership or corporation engaged for profit in the business of making bonds in criminal proceedings – whose authority to write bonds has been suspended or revoked, "shall have the right of appeal to the next highest court having criminal jurisdiction." T.C.A. §§ 40-11-301(4)(A), -125(d). The suspension of a bonding agent's authority is reviewed de novo. *In re Cox*, 389 S.W.3d 794, 798 (Tenn. Crim. App. 2012) (citing T.C.A. § 40-11-125(d)).

Tennessee Code Annotated section 40-11-125 governs the suspension or withdrawal of a bonding agent's authority. In addition to certain prohibited practices in part 3 of Chapter 11 which are accompanied by criminal liability, the statute provides:

> approval of a professional bondsman or other surety may be withheld, withdrawn or suspended by any court if, after investigation, it appears that a bondsman:
>
> (1) Has been guilty of violating any of the laws of this state relating to bail bonds;
>
> (2) Has a final judgment of forfeiture entered against the

bondsman which remains unsatisfied; or

(3) Is guilty of professional misconduct as described in § 40-11-126.

T.C.A. § 40-11-125(a) (2011). The section regarding professional misconduct states, among other violations, that no bonding agent shall "[s]olicit business directly or indirectly, by active or passive means, or engage in any other conduct which may reasonably be construed as intended for the purpose of solicitation of business in any place where prisoners are confined or in any place immediately surrounding where prisoners are confined." T.C.A. § 40-11-126(6).

The statute also mandates the procedure which the court must take to suspend the bonding agent:

Any court withholding, withdrawing or suspending a bondsman or other surety under this section shall notify the bondsman in writing of the action taken, accompanied by a copy of the charges resulting in the court's action. If, within twenty (20) days after notice, the bail bondsman or surety files a written answer denying the charges or setting forth extenuating circumstances, the court shall call a hearing within a reasonable time for the purpose of taking testimony and evidence on any issues of fact made by the charges and answer. The court shall give notice to the bail bondsman, or to the insurer represented by the bondsman, of the time and place of the hearing. The parties shall have the right to produce witnesses, and to appear personally with or without representation by counsel. If, upon a hearing, the court determines that the bail bondsman is guilty as alleged in the charges, the court shall thereupon withhold, withdraw or suspend the bondsman from the approved list, or suspend the bondsman for a definite period of time to be fixed in the order of suspension.

T.C.A. § 40-11-125(b).

In the case at bar, the State concedes that the trial court did not properly notify the appellant of the charges resulting in his suspension and that the trial court improperly denied the appellant the opportunity to deny those charges in writing and at a hearing. From the record, it is unclear if the trial court concluded that the appellant had been guilty of violating

the laws relating to bail bonds based on his failure to notify the trial court of his arrest within seventy-two hours; if it concluded, based on the Davidson County order of revocation, that he had been guilty of professional misconduct by violating section 126(6); if it concluded that he had been guilty of professional misconduct based on the allegations of violations between September 2010 and March 2011 in the complaint filed by Grumpy's Bail Bonds and never heard by the court; if the trial court was basing its suspension on allegations which had been adjudicated to be without merit or dismissed by the State[4]; or if its decision was based on some other fact or statutory provision.[5] *See* T.C.A. § 40-11-125(a). Because the trial court characterized its action as merely vacating a prior order, it did not follow the procedures mandated by statute for suspending a bonding agent.

"If a trial court suspends a bondsman from making bonds, the bondsman has a right to receive notice of the action taken and a copy of the charges that brought about the suspension." *State v. AAA Aaron's Action Agency Bail Bonds, Inc.*, 993 S.W.2d 81, 84

---

[4]The appellant argues that the trial court was improperly considering allegations that had previously been found to be without merit, based on the judge's statement that "[s]omeone made the statement the last time I was in court here about the fact that a hearing that was heard in front of Judge Beal that there was really nothing to it. I disagree wholeheartedly." While the trial court acknowledged that some of the dismissed complaints were "part of it," along with "everything in the file," the trial court also stated that "where it's been unfounded [–] I'm not considering that." On remand, the trial court, if it pursues suspension, will be required to give the appellant notice of the exact charges upon which suspension would be based.

[5]In considering a court's power to suspend or revoke a bonding agent's authority, Tennessee courts have frequently asserted that trial courts have the inherent power to administer their affairs, including the power to set reasonable regulations regarding the making of bonds. *See In re A Way Out Bonding*, No. M2012-00423-CCA-R3-CO, 2013 WL 2325276, at *2 (Tenn. Crim. App. May 28, 2013); *In re Cumberland Bail Bonding Co.*, No. E2012-02556-CCA-R3-CO, 2013 WL 4734801, at *4 (Tenn. Crim. App. Sept. 3, 2013); *In re Byrd*, No. W2009-01257-CCA-R3-CD, 2010 WL 161500, at *1 (Tenn. Crim. App. Jan. 15, 2010); *In re Internat'l Fidelity Ins. Co.*, 989 S.W.2d 726, 728 (Tenn. Crim. App. 1998); *In re Hitt*, 910 S.W.2d 900, 904 (Tenn. Crim. App. 1995). Courts have also cited to the proposition that "the fact that the legislature has enacted statutes dealing with bail bondsmen and their regulation does not in any way interfere with the inherent powers of regulation possessed by the court to act in addition to the statutes." *In re Internat'l Fidelity Ins. Co.*, 989 S.W.2d at 728 (quoting *In re Hitt*, 910 S.W.2d at 904); *see In re Cumberland Bail Bonding Co.*, 2013 WL 4734801, at *4 (asserting that the statutory regulations "do[] not by any stretch of the imagination attempt to cover the whole field of what is necessary for a bondsman before he is allowed to make bonds in the various courts" (quoting *Taylor v. Waddey*, 334 S.W.2d 733, 736 (1960))). However, these cases all cite to decisions that precede the current statutory provisions regarding suspension of bond agents in Part 1 of Chapter 11. As the case at bar does not require us to explore the power of courts to regulate bondspersons outside the mandates of statute, we make no observations regarding what, if any, extra-statutory grounds might be a proper basis for suspension. *See, e.g., Izevbizuaiyamu v. State*, No. W2012-00017-CCA-R3-CD, 2012 WL 6115092, at *6 (Tenn. Crim. App. Dec. 10, 2012) (affirming the denial of a bonding agent's application based on the applicant's dishonesty with the trial court).

(Tenn. Crim. App. 1998); *see also In re Cumberland Bail Bonding Co.*, 2013 WL 4734801, at *4. Accordingly, we agree with the State that the trial court's order of suspension must be vacated and the matter remanded.

## CONCLUSION

Based on the foregoing, we vacate the judgment of the trial court and remand the matter for further proceedings in accordance with this opinion.

_____
JOHN EVERETT WILLIAMS, JUDGE